United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

T. H.,

Plaintiff,

v.

SSA COMMISSIONER, et al.,

Defendants.

Case No. 26-cv-01852-LB

**ORDER AFFIRMING COMMISSIONER'S FINAL DECISION; DENYING REQUEST FOR REMAND**

Re: ECF Nos. 9, 10

## INTRODUCTION

The plaintiff seeks judicial review under 42 U.S.C. § 405(g) of the Commissioner's final decision denying his application for Title II disability-insurance benefits.[1] Because his insured status expired on December 31, 2023, he had to establish disability between February 20, 2019 (his alleged onset date) and that date.[2] The administrative law judge (ALJ) found severe impairments (degenerative disc disease, osteoarthritis of the hips, and schizophrenia), found the plaintiff's gastrointestinal conditions (including gastroesophageal reflux disease (GERD) and irritable bowel syndrome (IBS)) not severe, and assessed a residual functional capacity (RFC) for

[1] Compl. – ECF No. 1. Citations to the administrative record (AR), lodged at ECF No. 6, are to the record's internal pagination. All other citations are to documents in the Electronic Case File (ECF) and refer to the ECF-generated page numbers at the top of the documents.

[2] AR 19, 21.

a reduced range of medium work limited to simple tasks with occasional social interaction.[3] Crediting a vocational expert's testimony that a person with that RFC could work as a hand packager, hospital cleaner, or cleaner II, the ALJ found the plaintiff not disabled at step five.[4]

The plaintiff raises two issues: (1) the ALJ erred at step two by not finding his IBS severe and by including no IBS-related limitations in the RFC, and (2) the ALJ rejected his testimony about the intensity, persistence, and limiting effects of his nausea and vomiting without specific, clear, and convincing reasons.[5]

The court affirms. Any step-two error was harmless: the ALJ resolved step two in the plaintiff's favor, continued the sequential analysis, and considered the digestive impairments (and the plaintiff's testimony about them) in the steps that followed. And read as a whole, the ALJ's decision gives a specific, clear, and convincing reason, supported by substantial evidence, for discounting the nausea-and-vomiting testimony: the longitudinal treatment record (intermittent complaints, symptom reviews repeatedly negative for nausea and vomiting through the date last insured, and notations that medication controlled the symptoms) is inconsistent with testimony of near-continuous vomiting episodes requiring daily medication and three-day recoveries. The ALJ's additional reliance on the plaintiff's daily activities does not support the finding as to these symptoms, but that error is harmless because the record-based reason independently sustains the finding.

## STATEMENT

### 1. Procedural History

The plaintiff, born in November 1958, worked for years as a claims assistant for the Social Security Administration and stopped working in early 2019.[6] On January 24, 2023, he protectively filed a Title II application for a period of disability and disability-insurance benefits, alleging disability beginning February 20, 2019, due to a musculoskeletal disorder (lower back), a

---

[3] AR 21, 23–24.

[4] AR 34–35.

[5] Pl.'s Br. – ECF No. 9 at 5, 12–18.

[6] AR 34, 50–52, 288.

United States District Court
Northern District of California

digestive-system disorder (stomach), and hypertension.[7] The Commissioner denied the application initially on August 11, 2023, and on reconsideration on September 12, 2024.[8] The plaintiff requested a hearing, and on April 2, 2025, ALJ Corinne McLaughlin held a telephonic hearing at which the plaintiff (represented by counsel) and a vocational expert (VE) testified.[9] The ALJ issued an unfavorable decision on May 23, 2025.[10] The Appeals Council denied review on January 9, 2026, making the ALJ's decision the Commissioner's final decision.[11] The plaintiff timely sought judicial review, and all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c).[12] The case is fully briefed and suitable for decision without oral argument.[13]

**2. Medical Records**

Because the issues concern the plaintiff's digestive impairments, this summary focuses on that evidence. In December 2021, the plaintiff's primary-care physician, John Clark, M.D., assessed severe IBS, GERD, and overactive bladder and renewed the plaintiff's prescriptions, including Reglan and Zofran for nausea.[14] In January 2022, the plaintiff reported on-and-off abdominal cramping and intermittent diarrhea and constipation (mostly constipation, managed with daily MiraLAX).[15] Dr. Clark characterized the IBS as severe and triggered by work stress and wrote that the plaintiff was "purely disabled based on IBS, schizophrenia, and chronic lower back pain from arthritis."[16] In February 2022, the plaintiff went to the emergency room for lower abdominal

[7] AR 18–19, 287. The ALJ's decision gives the protective-filing date as January 24, 2023; the plaintiff's brief gives February 9, 2023. *Compare* AR 19, *with* Pl.'s Br. – ECF No. 9 at 5 (citing AR 244). The discrepancy does not affect the analysis.

[8] AR 96, 107.

[9] AR 43–73, 128.

[10] AR 15–42.

[11] AR 1.

[12] Compl. – ECF No. 1; Consents – ECF Nos. 4–5.

[13] Pl.'s Br. – ECF No. 9; Comm'r's Br. – ECF No. 10; Reply – ECF No. 11; Civil L.R. 16-5.

[14] AR 440, 451.

[15] AR 459.

[16] AR 459, 461–62.

aching and cramping. His labs were normal, and he said that he had not been taking MiraLAX daily.[17] He followed up with Dr. Clark by telemedicine.[18] In June 2022, he reported dizziness and continued intermittent abdominal cramping with worse acid reflux. His physical examination was normal, and his symptom review was negative for abdominal pain and vomiting.[19] In October 2022, his symptom review was negative for abdominal distention, abdominal pain, diarrhea, and nausea.[20] In December 2022, he reported that his IBS was "overall stable" with regular bowel movements on MiraLAX and some nauseousness when he talked or tried to get up; his symptom review was negative for abdominal pain and vomiting.[21]

In June 2023, consultative internal-medicine examiner Roger Wagner, M.D., recorded a history of nausea, vomiting, and constipation (with upper and lower endoscopies showing polyps) and noted that the plaintiff took medications to control his symptoms.[22] The next day, the plaintiff told Dr. Clark that he had ongoing cramping with constipation and diarrhea. Dr. Clark described the IBS as mixed and severe.[23] In October 2023, the plaintiff reported neck and back pain. His symptom review was negative for abdominal complaints.[24] In December 2023 (the month his insured status expired), he reported "on and off" abdominal pain and cramping. His symptom review was negative for abdominal pain and vomiting.[25] In July 2024, after the date last insured, he reported intermittent diarrhea, constipation, and abdominal cramping and was stable on his medications.[26] Throughout the period, his medications included Reglan and Zofran for nausea, MiraLAX for constipation, and Risperdal and benztropine (Cogentin) for schizophrenia; nausea,

---

[17] AR 477.

[18] AR 478.

[19] AR 483, 485.

[20] AR 502.

[21] AR 515–16.

[22] AR 526, 536.

[23] AR 646–47.

[24] AR 673.

[25] AR 691.

[26] AR 967.

dizziness, and vomiting are listed side effects of some of those psychiatric medications.[27]

After the date last insured, on November 18, 2024, Dr. Clark completed physical and mental residual-functional-capacity assessments opining, among other things, that the plaintiff could stand or walk only four hours in an eight-hour workday, would be off task more than twenty-five percent of the workday, could sustain attention for only thirty minutes at a time, and would be absent from work at least four days per month.[28]

### 3. Administrative Hearing

#### 3.1 The Plaintiff's Testimony

The plaintiff testified that "GERD and throwing up" (along with vertigo when he steps out of a car) keep him from doing his past work or any other work.[29] The episodes happened "pretty continuously." His medication (Zofran) was not preventative, so he took two to four dissolving tablets once the vomiting started, and it took about three days to get over an episode. His doctor told him to take the Zofran as needed, so he treated episodes at home rather than going to the doctor.[30] Through 2023 he took Zofran every day. The vomiting was "bad, really bad in 2023" and, by the time of the hearing, episodes recurred about every three weeks.[31] He also had back pain around his waist in 2023 and could not have lifted a five-gallon water jug, though he could carry a gallon of milk in each hand.[32] As to his schizophrenia, his symptoms have been the same since he stopped working; he takes Risperdal twice daily, which clears his mind. On bad days he had "a problem with people telling me things and they're not there." He stayed away from people so they would not learn of his diagnosis but could be with others "if I really want to." He did his

[27] AR 434, 451, 470–71.

[28] AR 817–18; *see* AR 32 (the ALJ's summary of Exs. 15F–16F).

[29] AR 53.

[30] AR 54–55.

[31] AR 55.

[32] AR 55–56.

own grocery shopping without difficulty and had no problems driving.[33] He described medication side effects, including forgetfulness and "medicine mouth" with involuntary jaw opening and closing that was present, but milder, in 2023.[34] In a March 2023 exertional-activities questionnaire, he wrote that (1) back pain, fatigue, and tiredness, "combined with throwing up at times," prevented him from working, (2) dizziness limited him and his medication made him nauseous, and (3) he cleaned his own living area, carried grocery bags and a laundry basket two to three times a week, delayed chores because of pain, and could work only ten to twenty minutes before stopping.[35]

**3.2 The Vocational Expert's Testimony**

The VE classified the plaintiff's past relevant work as general clerk (DOT 209.562-010, light exertion, SVP 3).[36] For a hypothetical person of the plaintiff's age, education, and work experience who could perform medium work with frequent postural activities, simple instructions and tasks, occasional interaction with supervisors, coworkers, and the public, simple work-related decisions, occasional workplace changes, and no production-paced work, the VE testified that past work was precluded (because of the social limitations) but that the person could perform three representative medium, SVP 2 jobs: hand packager (about 70,000 national jobs), hospital cleaner (about 35,000), and cleaner II (about 53,000).[37] The VE further testified that being off task twenty percent of the workday would preclude all work, that needing reminders every thirty minutes to stay on task would be inconsistent with competitive employment, and that employers tolerate no more than one absence per month, not to exceed eight per year.[38]

[33] AR 49, 57–59, 64.

[34] AR 62–63.

[35] AR 294–96.

[36] AR 67.

[37] AR 67–69.

[38] AR 70–71.

**4. The ALJ's Findings**

Applying the five-step sequential evaluation, the ALJ found at step one that the plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured, and at step two that he had severe impairments of degenerative disc disease, osteoarthritis of the hips, and schizophrenia.[39] The ALJ found the plaintiff's other conditions (including benign prostatic hyperplasia, prostatitis, GERD, diverticulosis, and IBS) not severe: "he had rare complaints related to these impairments, normal examinations, and little in the way of findings consistent with more than minimal limitations on a regular and continuing 12-month basis."[40] Surveying the treatment records, the ALJ found the urinary and digestive symptoms "quite transient": symptom reports in early and mid-2022 were followed by "only intermittent complaints and quite normal follow up," and although the plaintiff "did report digestive symptoms at the hearing, including alleged nausea and vomiting," he "had little evidence of nausea and vomiting or any particularly limiting symptoms." He "reported abdominal symptoms" in 2022 "but then did not report similar symptoms again until late 2023 and then in mid-2024, which did not appear to persist on a continuous basis."[41]

At step three, no listing was met or medically equaled.[42] The ALJ then assessed an RFC for medium work except: frequent climbing, stooping, kneeling, crouching, and crawling; simple instructions and tasks; occasional interaction with supervisors, coworkers, and the general public; only simple work-related decisions; only occasional changes in the work setting; and no production-paced work (bench work and daily quotas acceptable).[43] In making that finding, the ALJ recited the plaintiff's testimony — including that he "cannot work due to vertigo and vomiting," "had issues with vomiting in 2023," and "took the medication Zofran daily in 2023" — and found that his medically determinable impairments could reasonably be expected to cause the alleged symptoms

[39] AR 21.

[40] *Id.*

[41] AR 22.

[42] AR 23.

[43] AR 24–25.

but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record."[44] The ALJ reviewed the musculoskeletal and mental-health treatment evidence and the opinion evidence, finding (among other things) Dr. Clark's November 2024 stand/walk, off-task, attention, and absenteeism opinions unpersuasive because there was "little in the document to support such significant restrictions," an examination the month before was "entirely benign," and the opinions were inconsistent with the imaging, the minimal examination findings, and the rare symptom reports through the date last insured.[45] Addressing the symptom testimony, the ALJ wrote:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the longitudinal record. Significantly, there is evidence in the record of activities of daily living that show functional capacity not consistent with disabling symptoms. For example, at hearing the claimant testified he lives alone and has a driver's license and does not have any problems driving. The claimant testified in 2023 he was able to watch a movie and was able to tell some things about what happened in the movie. The claimant reported in 2023 he did his own grocery shopping and did not have difficulty going to the store. The claimant testified that by the end of the year in 2023 he did not have difficulties with concentration. Further, the record also shows the claimant's activities of daily living are not consistent with the alleged social and cognitive limitations, including ability to gamble and be around others. He reported going to Nevada to gamble and, as above, reported walking in Carmel and going to a restaurant for holidays.[46]

At step four, the plaintiff could not perform his past relevant work as a general clerk.[47] At step five, relying on the VE's testimony, the ALJ found that the plaintiff could perform the three representative jobs and was not disabled from the alleged onset date through the date last insured.[48]

[44] AR 25–26.

[45] AR 26–32.

[46] AR 33. The gambling trip and the restaurant plan appear in treatment notes from September and December 2024, after the date last insured. AR 29.

[47] AR 34.

[48] AR 34–36.

United States District Court
Northern District of California

## LEGAL STANDARDS

**1. Standard of Review**

Under 42 U.S.C. § 405(g), the court may set aside the Commissioner's denial of benefits only if the ALJ's findings are based on legal error or are not supported by substantial evidence. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021), *superseded by statute on other grounds*; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The substantial-evidence threshold "is not high": it requires "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up). The court considers the record as a whole, weighing the evidence that supports and detracts from the ALJ's conclusion, *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017), but where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion, *Ahearn*, 988 F.3d at 1115–16. The court reviews the decision on the reasons the ALJ gave, not post hoc rationalizations. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded by regulation on other grounds*.

**2. The Five-Step Framework**

A claimant is disabled if a medically determinable impairment of the requisite duration prevents him from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The ALJ applies a five-step sequential evaluation: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether the impairment meets or medically equals a listing; (4) whether, given his RFC, he can perform his past relevant work; and (5) whether he can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The claimant bears the burden at steps one through four; at step five, the burden shifts to the Commissioner. *Ford v. Saul*, 950 F.3d 1141, 1148–49 (9th Cir. 2020). In assessing the RFC, the ALJ must consider the limiting effects of all of the claimant's medically determinable impairments, including those that are not severe. 20 C.F.R. §§ 404.1520(e),

United States District Court
Northern District of California

404.1545(a)(2); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). For disability-insurance benefits, the claimant must establish disability on or before the date last insured. 42 U.S.C. § 423(a)(1)(A), (c); 20 C.F.R. § 404.131.

## ANALYSIS

### 1. Any Step-Two Error Was Harmless

Step two screens out groundless claims. An impairment is severe if it significantly limits the claimant's ability to do basic work activities, 20 C.F.R. §§ 404.1520(c), 404.1522, and it can be found not severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (cleaned up); *accord Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (step two is a "de minimis screening device" (cleaned up)); *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987). The claimant bears the burden of showing severity. *Edlund v. Massanari*, 253 F.3d 1152, 1159–60 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). But step two is a gatekeeping device, not the stage at which the ALJ fixes the content of the RFC: once a claimant clears step two, the ALJ must consider the limiting effects of all impairments — severe or not — in assessing the RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017); 20 C.F.R. § 404.1545(a)(2). It follows that when the ALJ resolves step two in the claimant's favor and continues the analysis, a failure to designate an additional impairment as severe is harmless so long as the ALJ considers that impairment's effects at the later steps. *Buck*, 869 F.3d at 1049.

That is this case. The ALJ found three severe impairments and proceeded through step five. And she did not disregard the digestive impairments: she surveyed the IBS- and GERD-related treatment history, expressly addressed the hearing testimony "including alleged nausea and vomiting," recited that testimony again at the RFC stage, applied the two-step symptom framework to it, and evaluated Dr. Clark's opinions about the associated functional limits.[49] The court therefore need not decide whether the record cleared step two's de minimis bar; even

[49] AR 21–22, 25–26, 32–33.

United States District Court
Northern District of California

assuming it did, the classification error would not by itself warrant remand. The plaintiff's authority is consistent with this approach: it locates the meaningful inquiry at the RFC stage. *Heidi J. v. Comm'r of Soc. Sec.*, No. C23-1460-BAT, 2024 WL 1406680, at *5 (W.D. Wash. Apr. 2, 2024).

The plaintiff's real complaint is that the RFC contains no IBS-related limitations for time off task, breaks, or absences. But that complaint stands or falls with the evidence the ALJ discounted: the plaintiff's symptom testimony (addressed in the next section) and Dr. Clark's opinions. As to Dr. Clark, three points. First, his January 2022 statement that the plaintiff was "purely disabled based on IBS, schizophrenia, and chronic lower back pain" is a statement on an issue reserved to the Commissioner ("inherently neither valuable nor persuasive") that the ALJ was not required to analyze. 20 C.F.R. § 404.1520b(c)(3)(i). The plaintiff concedes the point.[50] Second, a treatment note describing IBS as "severe" is a clinical characterization, not an assessment of specific work-related functional limits, and for claims filed after March 27, 2017, there is no deference hierarchy for treating sources: the ALJ evaluates each medical opinion's persuasiveness, focusing on supportability and consistency. *Id.* § 404.1520c; *Woods v. Kijakazi*, 32 F.4th 785, 787, 791–92 (9th Cir. 2022). The reply's contrary framework (built on *Trevizo*, *Garrison*, and *Lester*) applies the superseded treating-physician rule, *Woods*, 32 F.4th at 792. Third, Dr. Clark's November 2024 off-task, attention, and absenteeism opinions (rendered nearly eleven months after the date last insured) were evaluated: the ALJ found them unpersuasive as unsupported by Dr. Clark's own records (including an "entirely benign" examination the month before) and inconsistent with the imaging, the minimal examination findings, and the rare symptom reports through the date last insured.[51] The opening brief does not challenge that persuasiveness finding; it cites the opinion only to show that the asserted step-two error mattered.[52]

Because the ALJ decided step two in the plaintiff's favor and considered the digestive

[50] Reply – ECF No. 11 at 3.

[51] AR 32.

[52] Pl.'s Br. – ECF No. 9 at 14–15.

impairments in the ensuing analysis, any error in declining to label the IBS severe was harmless. Whether the RFC needed digestive-symptom limitations turns on the symptom-testimony challenge, to which the court turns.

**2. The ALJ Permissibly Discounted the Testimony About Nausea and Vomiting**

ALJs evaluate symptom testimony in two steps. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms; second, if so and absent evidence of malingering, the ALJ may discount the claimant's testimony about symptom severity "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (cleaned up); *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014); 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The ALJ must identify the testimony found not credible and the evidence that undermines it; general findings do not suffice. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015); *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The standard is demanding, but it is not a demand for the impossible: an ALJ "is not required to believe every allegation" of disabling symptoms, *Ahearn*, 988 F.3d at 1116, and may discount testimony that is inconsistent with the objective medical record, *Smartt v. Kijakazi*, 53 F.4th 489, 498–99 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."), although a lack of full corroboration cannot be the sole ground, *Burch*, 400 F.3d at 681; 20 C.F.R. § 404.1529(c)(2). Effective control of symptoms with medication also supports an adverse finding. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Daily activities do so only if the ALJ explains how they contradict the particular testimony at issue or shows that they reflect transferable work skills. *Ferguson v. O'Malley*, 95 F.4th 1194, 1197–98 (9th Cir. 2024); *Smith v. O'Malley*, No. 23-3220, 2024 WL 4879472, at *1 (9th Cir. Nov. 25, 2024); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In reviewing the ALJ's reasons, the court reads the decision as a whole, *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (the court "look[s] to all the pages of the ALJ's decision"), but it confines its review to the grounds the ALJ invoked, *Bray*,

554 F.3d at 1225. And where one of several reasons fails, the error is harmless if the remaining reasons are legally valid and supported by substantial evidence. *Carmickle v. Comm'r*, 533 F.3d 1155, 1162–63 (9th Cir. 2008).[53]

The first step is satisfied, and malingering is not at issue: the ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.[54] The testimony at issue is that "GERD and throwing up" prevent all work: episodes came on "pretty continuously," each required several Zofran tablets and about three days of recovery, and in 2023 (the last year of coverage), the symptoms were "really bad" and required Zofran daily.[55]

After reciting that testimony, the ALJ found the plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms "not consistent with the medical evidence and other evidence in the record."[56] Standing alone, that finding would be the kind of general, conclusory statement that *Brown-Hunter* forbids. 806 F.3d at 493. But the decision does not stop there. The ALJ addressed the digestive-symptom allegations specifically: the plaintiff "did report digestive symptoms at the hearing, including alleged nausea and vomiting," but "while he had a history of GERD, he had little evidence of nausea and vomiting or any particularly limiting symptoms:" his complaints were "rare," his examinations "normal," his abdominal-symptom reports were clustered in 2022 and "did not appear to persist on a continuous basis," and he was "stable on current meds."[57] That is a specific reason directed at the specific testimony: the longitudinal treatment record contradicts the alleged frequency and severity of the nausea and vomiting. Reading the ALJ's full explanation across the decision, *Kaufmann*, 32 F.4th at 851, the court can meaningfully review the finding without speculating about its basis. *Cf. Brown-Hunter*,

[53] The Commissioner preserves his disagreement with the clear-and-convincing standard. Comm'r's Br. – ECF No. 10 at 4 n.1. This court is bound by Ninth Circuit precedent. *E.g.*, *Ferguson*, 95 F.4th at 1199.

[54] AR 26.

[55] AR 53–55.

[56] AR 26.

[57] AR 21–22.

806 F.3d at 494–95.

The reason is supported by substantial evidence. During the coverage period, the plaintiff's providers repeatedly recorded symptom reviews negative for nausea and vomiting (in December 2021, January 2022, June 2022, October 2022, December 2022, June 2023, October 2023, and December 2023).[58] In December 2022, the plaintiff described his IBS as "overall stable" on MiraLAX, with only positional nauseousness.[59] At the June 2023 consultative examination (in the very year he described as his worst), Dr. Wagner recorded a history of nausea and vomiting but noted that medications controlled the symptoms.[60] And in December 2023, just before the date last insured, the plaintiff reported only "on and off" abdominal pain and cramping, with a symptom review again negative for vomiting.[61] Testimony that vomiting struck "pretty continuously," required daily Zofran throughout 2023, and produced three-day recoveries is inconsistent with (not merely uncorroborated by) those contemporaneous records: at the visits the plaintiff attended, he denied the symptoms he now describes as near-constant, and the stability and medication-control notations independently undercut the alleged severity. *Smartt*, 53 F.4th at 498–99; *Warre*, 439 F.3d at 1006; 20 C.F.R. § 404.1529(c)(2)–(3).

The plaintiff's responses do not change the result. His standing prescriptions for Reglan and Zofran establish that he experienced nausea (a premise the ALJ accepted at the first step), but they do not corroborate the alleged frequency or severity, and the ALJ reasonably weighed the contemporaneous denials and stability findings.[62] His explanation that he treated episodes at home with Zofran, as his doctor instructed, explains why he did not seek interval care for each episode. It does not explain the negative symptom reviews recorded at the appointments he did attend.[63] His observation that the ALJ's chronology was imprecise — the plaintiff reported ongoing

[58] AR 440, 460, 483, 502, 516, 646, 673, 691.

[59] AR 515–16.

[60] AR 536, 540.

[61] AR 691.

[62] Reply – ECF No. 11 at 4.

[63] AR 54–55; Reply – ECF No. 11 at 5.

cramping with constipation and diarrhea in June 2023, within the window the ALJ described as free of "similar symptoms" — is fair as far as it goes, but that report concerned bowel symptoms, not nausea or vomiting (for which the same visit's symptom review was negative), so the imprecision does not undermine the ALJ's rationale as to the testimony actually at issue.[64] And the theory that the plaintiff's psychiatric medications caused his nausea appears for the first time in the reply and, in any event, goes to the symptoms' cause, not to the dispositive point: the record's inconsistency with their alleged frequency and severity.[65]

The court agrees with the plaintiff that the ALJ's daily-activities rationale does not support the finding as to this testimony. The activities the ALJ cited (living alone, driving, grocery shopping, following a movie, maintaining concentration, gambling in Nevada, walking, and holiday dining) bear on the alleged social and cognitive limitations (as the ALJ herself framed them), not on episodic vomiting, and the gambling trip and restaurant plan post-date the date last insured.[66] None contradicts testimony that the plaintiff intermittently vomited and needed days to recover. *Ferguson*, 95 F.4th at 1197–98; *Smith*, 2024 WL 4879472, at *1. But because the ALJ's record-based reason is legally sufficient and independently supported, the flawed reliance on daily activities is harmless. *Carmickle*, 533 F.3d at 1162–63. Nor does affirmance rest on post hoc rationalization: the Commissioner's brief cites the specific symptom-review entries, but those citations substantiate the rationale the ALJ gave ("rare complaints," "normal examinations," "little evidence of nausea and vomiting") rather than supply a new one. *Cf. Bray*, 554 F.3d at 1225.

The ALJ identified the testimony, gave a clear and convincing reason grounded in the longitudinal record, and supported it with substantial evidence. The adverse symptom finding stands, and with it the RFC and the step-five determination.

---

[64] AR 646–47.

[65] Reply – ECF No. 11 at 4 (citing AR 433).

[66] AR 29, 33.

## CONCLUSION

The court affirms the Commissioner's final decision. This resolves ECF Nos. 9 and 10.

**IT IS SO ORDERED.**

Dated: September 14, 2026

LAUREL BEELER
United States Magistrate Judge